## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TORO DEFENSE CONTRACTING, LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. __26-8 C__ |

## COMPLAINT

Plaintiff, Toro Defense Contracting, LLC ("Toro"), for its Complaint against Defendant, the United States of America ("United States"), alleges and states as follows:

1. Toro is a Service-Disabled, Veteran-Owned Small Business and an 8(a)-certified DBE, which resides at 214 East Goode Street, Quitman, Texas 75783-2533, and is authorized to transact business in Texas, Oklahoma, and other states.

2. This action is founded upon the policies, rules, and regulations of certain executive departments, those being the Department of Defense and the Department of the Army, U.S. Army Corps of Engineers ("Corps").

3. Jurisdiction and venue are proper in this Court pursuant to the Tucker Act, 28 U.S.C.A. § 1491(a); and, the Contract Disputes Act ("CDA"), 41 U.S.C.A. §§ 7101-7109. The actions giving rise to this complaint "arose under" and "relate to" a contract for design and construction services between Toro and the Corps.

4. Toro is a federal contractor, as defined by the CDA, 41 U.S.C. §§ 7107(7), specializing in infrastructure construction work.

5. On September 26, 2022, Toro was awarded a design-build contract (Contract No. W9124L22C0004) to install an exterior crane building at Building 2454 in Fort Sill, Oklahoma.

6. During the design phase, the Government engaged in numerous admitted delays, while refusing to grant additional delay days or costs to Toro. Later, during construction operations, Toro encountered various latent site conditions (*i.e.*, ground water) and the Government again refused to grant additional delay days

7. As a result, Toro submitted several Requests for Equitable Adjustment ("REA") for both delay days and costs, all of which were denied. The REAs are more specifically described as follows.

8. **REA 001 – Differing Site Condition**: On October 3, 2023, Toro encountered significant groundwater infiltration when it began its pier drilling that ultimately required the encasement of piers. That same day, Toro informed the Contracting Officer (S. Matthews), the Contracting Specialist (J. Ramos) and the Contracting Officer's Representative (R. Miller) regarding the differing site conditions while Toro continued to assess the ongoing situation in the field. The following day, Wednesday, October 04, 2023, Toro promptly notified the Contracting Officer (S. Matthews) in writing per FAR 52.236-2. On Monday, October 09, 2023, Toro submitted a Corrective Action Plan (CAP) that was denied. That same day, the Government informed Toro that it intended to deny any request for equitable adjustment based on the fact that the site-specific boring logs (performed 258 days after Toro bid the Project) indicated "the presence of groundwater." While the Government provided Toro with borings of contiguous sites, Buildings 2460 and 2575, prior to the time of bid, Toro could not have discovered the Project's latent subsurface condition prior to the time of bid; Toro did it have any duty to discover the latent subsurface condition during the bid of the Project; the Government-provided boring reports of

contiguous buildings fail to provide notice of any latent subsurface condition at the specific Project site; Even assuming arguendo that Toro was somehow "on notice" of a general groundwater condition (which the reports states "should be anticipated in all excavations"), such alleged notice fails to provide Toro with specific notice of a latent subsurface condition that requires a material change in construction; Toro, nor anyone, could have known about the latent subsurface condition (differing site condition) – until the piers were actually drilled; and, the Government would have denied any line item for a material change in construction due to a latent subsurface condition – until it was actually encountered. The differing site conditions encountered by Toro resulted in a total additional cost of $145,151.37 and schedule impacts to the PEMB Erection and Crane Delivery.

9.      **REA 002 – Deviations from Contract Documents – Bay Spacing**: The Government provided sample documents during the Request for Bid to be used as the Basis of Design. The sample drawings were issued by the Government in Attachments 3. Toro's subcontractor, K-Con, used the information provided by the Government to bid the project. There were several items provided in Attachment 3 that were found, after award of contract, to be in conflict with the Building 2454 Site at which the new structure was to be constructed. One example was the sample buildings; Buildings 2460 and 2475 had different bay spacing. Building 2454 required an additional frame in order to align with the bays. K-Con requested a change for the additional cost for the frame, bollards, piers, etc.; $27,346.80 dollars. The Government rejected the additional cost. The Government provided a sample Geotechnical Report for building sites for Buildings 2460 and 2475. The Geotechnical Report showed subsurface conditions for (4) borings on sites not related to the site for Building 2454 in which we were to construct the structure. The conditions shown varied between the (4) borings and could not be used to ascertain site conditions

for the Building 2454 Site. The design drawings provided in Attachment 3 made no reference to special requirements for construction and showed the foundation design to be standard drilled piers. The Government-provided information in the Contract documents was incorrect; and Toro reasonably relied upon the Government-provided information when formulating its bid, impacting the agreed-upon scope and requirements detailed in the initial contract. The incorrect information was a substantial deviation from the original Contract, causing additional resources, time, and efforts beyond the initially anticipated scope. The deviations resulted in a total additional cost of $58,472.30 and schedule impacts resulting from necessary redesigns.

10. **REA 003 – Design Changes Directed by the Government**: After months of multiple reviews by the Government in which additional information continually was requested, a meeting was held on June 26th, 2023, in which Toro and the Government reviewed Contract drawings developed by Toro. The Government had consistently kept adding items after 'Final Review" that needed to be changed or incorporated into the document set. In the meeting, the latest set of comments were reviewed, and decisions were made to allow work to proceed; Toro believes the meeting minutes should reflect these events. Several items that were discussed were requested to be changed on the documents included the following: 1. Lightning Protection Plan that matched the sample provided by the Government in content was requested by the Government to add additional information which added (4) new drawings. Drawings requested by Government were pulled from another project; Reception Station Barracks and were not part of the drawings provided at Bid Request.; 2. The Engineer that designed the Mechanical and Electrical Systems was required to provide a Letter of Competency stating he could design electrical systems. The Government reviewers looked up the Engineers License and questioned his ethics as a Professional Engineer can design any system that they are competent in regardless of their license specialty.

Government Lead agreed, however, Toro was directed by the Government to have the Engineer of Record issue a letter stating he was competent even though during the meeting it was deemed unnecessary; 3. The Government made a field decision to have the new building structure align 24'-0" off of the existing structure instead of 20'-0". During the meeting it was agreed by the Contracting Officer that the distance could be As-Built whereas the Governments Field personnel insisted the drawings be modified and reissued with the Government directed dimension. The additional directed drawing modification took time; 4. The Government Field Inspector insisted all drawings have the same page identification format even though the Drawing Index had all drawings identified within the set; 5. Bollard Layout provided on Government provided bid drawings needed to be modified as the spacing shown would not work. This could have been noted as an As-Built condition, however, the drawing that was provided as a bid basis by the Government was required to be modified and reissued; 6. In general, regardless of the information that was provided by the Government for Bidding purposes, the government required more work to be done than was requested, by example, at bid time. The Government agreed to items in the meeting to allow work to continue. K-Con proceeded with the work that was agreed to and was told by Robert Miller to not schedule work. On July 5th, 2023, K-Con was informed the Government issued a Suspension of Work Order on the project. As a result of the design changes, Toro incurred an additional cost of $37,995.49 and delays to perform the extensive redesigns.

11.     **REA 004 – Suspension of Work**: The Suspension of Work Order was discussed in a meeting with the Government and 30 days were added to the schedule for the Government requested addition of items to the contract drawings. K-Con maintained an on-site superintendent and worked to provide the additional information requested. The issuance of the Suspension of Work Order effectively resulted in the loss of the construction schedule as subcontractors that were

scheduled had to find other work in order to generate revenue for that which was removed by the Suspension of Work. The overall delay caused by the Issuance of the Suspension of Work and next available time the subcontractors could return was (68) calendar days; (48) working days. K-Con submitted a change request for in the amount of $56,329.94 dollars to cover the additional cost of maintaining a superintendent and processing the additional items requested by the government. The construction schedule moved (68) calendar days based on reacquiring the subcontractors that had to find other work during the suspension and rescheduling other subcontractors that would have to come to the project later based on the shift. Major Items impacted included initiation of work - Saw Cutting the Concrete for pier Locations (7/6/2023 - 9/7/2023), Erect Metal Building (8/11/2023 – 10/11/2023) and Crane Delivery (8/25/2023 – 10/19/2023). As a result of the suspension, Toro incurred an additional cost of $82,492.10 and delays of 68 days.

12. On November 4, 2024, Toro submitted a Certified Claim as to REAs 001-004 in the total amount of $296,241.71 and requested additional days due to delays as follows: Transformer Long Lead Times 62 days; Suspension of Work 68 days; Transformer Placement Delay 91 days; Groundwater – Differing Site Condition 42 days; Piecemeal Bollard Placement and Differing Site Condition (Water Line Issue) 17 days; Retesting of Ground Ring 37 days; Water Infiltration in Trench Area 49 days. Toro requested a total of 375 additional days due to delays. Toro also disputed the Government's assessment of liquidated damages in the amount of $151,640.36 as a result of the requested additional days.

13. The Government failed to respond to Toro's November 4, 2024, Certified Claim, and as a result, it was deemed denied pursuant to 41 U.S.C. § 7103(f) on January 3, 2025.

As a result, Toro Defense Contracting, LLC, respectfully requests the following relief:

1. An increase in the Contract price in the principal amount of $296,241.71, exclusive of interest, claim preparation and other fees and costs recoverable under applicable law;

2. A determination that the Contracting Officer's denial of Toro's Certified Claim is contrary to the facts and law and was clearly erroneous;

3. A determination that the Contracting Officer exceeded her authority by assessing liquidated damages against Toro;

4. A determination that the Contracting Officer's assessment of liquidated damages was arbitrary, capricious, and unsupported by the facts and law; and,

5. Any such other relief as the Court may deem just and proper.

Respectfully submitted,

_____
Michael Evangelista-Ysasaga
ATTORNEYS FOR TORO DEFENSE, LLC
State Bar No. 24009301
**EY Law, PLLC**
222 N Expressway, Brownsville, TX 78521
+1 (956) 306-0234 | Office
+1 (956) 755-7004 | Direct Dial
michael@eylawpllc.com
www.eylawpllc.com